UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------- X
                                                              :
**ROBERT RAYMOND CRESPO,**                                    :
                                                              :
                              Plaintiff,                      :
                                                              :   **MEMORANDUM DECISION AND**
                                                              :   **ORDER**
            – against –                                       :
                                                              :   21-CV-313 (AMD)
**COMMISSIONER OF SOCIAL SECURITY**,                          :
                                                              :
                              Defendant.                      :
                                                              :
------------------------------------------------------------- X

**ANN M. DONNELLY**, United States District Judge:

The plaintiff challenges a decision by the Commissioner of the Social Security

Administration (the "Commissioner") that he was not disabled for purposes of receiving

disability insurance benefits ("SSDI") under Title II of the Social Security Act.  42 U.S.C. §§

401–34.  For the reasons set forth below, the plaintiff's motion for judgment on the pleadings is

denied, and the Commissioner's cross-motion for judgment on the pleadings is granted.

## BACKGROUND

On February 2, 2018, the plaintiff applied for SSDI because of spine, hip and foot

problems, among other issues.[1]  (ECF No. 14 at 4.)  His alleged disability onset date is March 1,

2013.  (*Id*.)  The Commissioner denied his application on April 19, 2018.  Shortly thereafter, the

plaintiff requested a hearing, which was held on October 8, 2019, before Administrative Law

Judge ("ALJ") Kimberly L. Schiro.  In a February 18, 2020 decision, the ALJ concluded that the

plaintiff was not disabled.  (*Id*.)  On July 14, 2020, the Appeals Council granted the plaintiff's

request for a three-week extension to submit briefing or additional evidence.  (ECF No. 9 ("Tr.)

---

[1]  The plaintiff claims that he has cervical stenosis, plantar fasciitis, diverticulosis, arthritis, hip issues, and
     pain from a broken collar bone.

at 7–8.)  The plaintiff's counsel filed a memorandum of law in support of his appeal on August

10, 2020.  (Tr. 171–73.)  He did not submit additional evidence, stating that:

> It should be noted that the medical record [is] sparse, with the
> [agency] finding there was insufficient evidence to make a decision
> in [the plaintiff's] case. [] Before finding [the plaintiff's] spinal
> impairment was not severe, *the ALJ should have attempted to
> develop the record, as is his duty pursuant to HALLEX 1-2-6-56.*

(*Id*.) (emphasis in original.)  The Appeals Council denied the plaintiff's request for review on

December 1, 2020.  (Tr. 1–6.)

## I.    Benefits Assessment Under the Social Security Act

A person is considered disabled for purposes of the Social Security Act if she cannot

engage in substantial gainful activity due to a physical or mental impairment that has lasted or is

expected to last for no less than twelve months.  42 U.S.C. § 423(d)(1)(A).  That means that to

qualify for benefits under the Act, a claimant must be unable to do her previous work or any

other kind of work.  *Dousewicz v. Harris*, 646 F.2d 771, 772 (2d Cir. 1981).

An ALJ uses a five-step sequential evaluation process to decide whether a claimant

satisfies this standard.  The first step is to determine whether the claimant is currently engaged in

any substantial gainful activity.  20 C.F.R. § 404.1520(a)(4)(i).  If the claimant is not, the ALJ

must next determine whether the claimant has a "severe impairment" that significantly limits her

ability to do basic work activities.  *Id.* § 404.1520(a)(4)(ii).  If the claimant has a severe

impairment, the ALJ must then decide whether the impairment is listed in 20 C.F.R. Part 404,

Subpart P, Appendix 1.  If it is, the ALJ will presume that the claimant is disabled.  *Id.* §

404.1520(a)(4)(iii).  If the impairment is not listed, the ALJ must assess the claimant's residual

functional capacity ("RFC"), which is her ability to work on a sustained basis despite the

impairments.  At step four, the ALJ must determine whether the claimant has the RFC to perform

her past work.  *Id.* § 404.1520(a)(4)(iv).  Finally, if the claimant cannot perform the prior work, the ALJ must assess whether she can do another job.  *Id.* § 404.1520(a)(4)(v).

"The claimant has the general burden of proving that . . . she has a disability within the meaning of the Act, and bears the burden of proving her case at steps one through four . . . ." *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008) (cleaned up).  At the last step, however, "the burden shifts to the Commissioner to show there is other work that the claimant can perform." *McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014) (cleaned up).

## II.     The ALJ's Decision

Although at step 1, the ALJ found that the plaintiff was not engaged in "substantial gainful activity" between March 1, 2013 through June 30, 2017, at step two, he found that the plaintiff's only "medically determinable impairment" was cervical stenosis,[2] and it did not qualify as "severe" under 20 C.F.R. 404.1521 *et seq.*  (*Id*. at 17–18).  The ALJ explained that she reached her decision because of the "lack of objective evidence in the medical record."  (Tr. at 22)  "Although the [plaintiff] reported cervical stenosis and neck pain, there [was] no medical evidence" "corroborating his allegations."  (*Id*. at 19.)  Nor did the record include "documented . . . abnormalities shown by medically acceptable . . . techniques," "progress notes [to show] . . . substantial functional deficits" or "imaging studies."  (*Id*.)  Other than a November 2017 MRI report from one of his medical providers showing "mild to moderate cervical stenosis," and "16

---

[2]  "A medically determinable impairment must result from anatomical, physiological, or psychological abnormalities, which can be shown by medically acceptable clinical and laboratory diagnostic techniques."  (Tr. 17.)

pages of orthopedic progress notes, including duplicates," the plaintiff's physical examinations were "overall normal." (*Id.*)

### a.    Development of the Record

The plaintiff stopped working on March 1, 2013. (ECF No. 19-1 at 2.) On March 2, 2018, he submitted a disability report listing Drs. Timothy Jayasundera, David Klug, and Ahmed Saleh as medical providers "who may have medical records about any of [his] physical . . . condition(s)." (Tr. 222–25). The plaintiff also said that Dr. Bella Zimelovich was his primary care provider, and that he had asked "all of his medical providers to forward their treatment records to her." (*Id.*; ECF No. 14 at 8.)

On March 8, 2018, the ALJ[3] requested that the plaintiff submit a separate disability and work history report (Tr. 198–217), and sent a follow-up request on March 23, 2018 (Tr. 195). The plaintiff did not respond until December 27, 2018; he submitted a short form reflecting that Dr. Zimilevich treated him in 2013 and recommended over-the-counter Advil. (Tr. 163–65.)

The ALJ also sent medical questionnaires to Drs. Zimilevich, Klug, Saleh and Jayasundera (Tr. 245–72, 277–82), as well as Coney Island Hospital, where the plaintiff was treated for a broken collarbone (Tr. 273–76). The ALJ told the providers that they "may reply directly on the questionnaire, submit a copy of your records, or provide a report on your letterhead, whichever is most convenient." (Tr. 245, 251, 257, 263, 277).

Dr. Klug had no relevant records because the plaintiff's last appointment with him was February 12, 2010. (Tr. 181.) On March 15, 2018, a representative from Coney Island Hospital

---

[3] "Most Social Security disability claims are initially processed through a network of local Social Security Administration (SSA) field offices and State Agencies." SSA, *Disability Determination Process*, https://www.ssa.gov/disability/determination.htm (last visited August 30, 2023). The New York State Office of Temporary and Disability Assistance, Division of Disability Determinations was one of the state agencies that corresponded with the plaintiff and his providers during this time. (ECF No. 19-1 at 2.) All such agency communications in this opinion are described as sent by the "ALJ".

also confirmed it had no records; the plaintiff's last visit was in 2002. (Tr. 183.) Drs. Zimilevich, Saleh, and Jayasundera did not respond.

On March 22, 2018, the ALJ sent follow-up letters to Drs. Zimilevich, Saleh, and Jayasundera in which she explained that "[t]his agency is responsible for the adjudication and review of disability claims on behalf of the federal government," that the plaintiff "has made an application for benefits and we need evidence from you to evaluate the claim" and that "[a] response from you is essential for the proper review and evaluation of this application." (Tr. 241–44) (emphasis omitted). They did not respond.

In a May 3, 2018 letter acknowledging the plaintiff's request for an administrative hearing, the ALJ reminded the plaintiff that he was "required to . . . submit all evidence" relating to his disability claim, and that "[t]he ALJ may choose to not consider the evidence if you fail to provide it timely." (Tr. 68–70.) The letter also stated, "You must let us know within 30 days . . . if you do not want to appear [via video teleconference]." (*Id*.) The plaintiff declined a video teleconference hearing on May 7, 2018 but did not send any supplemental evidence. (Tr. 83.)

On December 14, 2018, the ALJ sent the plaintiff's counsel another letter instructing him to submit additional medical evidence, provided the methods for doing so, and enclosed the applicable forms. (Tr. 152–53.)

On May 13, 2019, the ALJ notified the plaintiff that his hearing had been transferred to the Bronx, New York. (Tr. 84.) The letter reads in relevant part:

> [I]f there is more evidence you want the [ALJ] to see, please submit it as soon as possible. If you need help, please contact us immediately. Evidence you cannot submit to us before the hearing may be brought to the hearing, but earlier submission of evidence can often prevent delays in reviewing your client's case. If a physician, expert, or other witness is not cooperating with the production of documents important to your client's case, you may

5

> ask the ALJ to issue a subpoena that requires a person to submit
> documents or testify at your client's hearing.

(*Id*.)  In a letter dated September 27, 2019, the plaintiff's counsel informed the ALJ that he sent

HIPPA medical release request forms to Dr. Zimilevich, among other providers, as well as New

York Presbyterian Hospital and Behavioral Medical Research.  (Tr. 166.)  He further stated:

> At this time, we are not certain whether we will receive a response
> from the treating source prior to the expiration of the general 5 day
> deadline.  Should a reply be provided to us before or after the general
> deadline, the office will submit it to the SSA's Office of Hearings
> Operations as expeditiously as possible.

(*Id*.)  The plaintiff's counsel sent the ALJ a second letter on October 1, 2019, stating: "I write to

you today concerning a request for medical evidence.  Your Honor, there may be additional

providers that the claimant has treated with.  Our office inquired about any additional doctors,

and no information was provided to us by the [plaintiff]."  (Tr. 167.)

At the October 8, 2019 hearing, the plaintiff's counsel represented that "there are two

doctors in particular" from whom the plaintiff needed records—Drs. Zimilevich and Shapsis.

Counsel confirmed that Dr. Lyden, New York Presbyterian Hospital, and Behavior Medical

Research had no relevant records.  (Tr. 29.)  The ALJ granted counsel's request for an additional

three weeks to submit any outstanding evidence.  (Tr. 49.)

On December 23, 2019, the ALJ requested additional medical records from Montefiore

Medical Center.  (Tr. 229–40.)  Montefiore had none.  (Tr. 193.)  On January 29, 2020, the ALJ

informed the plaintiff's counsel of Montefiore's response, and gave him the opportunity to

submit written comments or a written statement concerning the evidence, or additional records

for consideration.  (Tr. 168–69.)  Counsel did not respond.  (Tr. 194.)

b.      **Medical Record Available to the ALJ**

The medical record consists only of Dr. Saleh's orthopedic treatment notes.  (Tr. 43, 174–80.)  On November 15, 2017, the plaintiff saw Dr. Saleh for neck pain.  He did not have numbness, tingling, or muscle weakness.  (Tr. 174–75.)  Dr. Saleh took an MRI and diagnosed the plaintiff with "mild to moderate cervical stenosis."  (Tr. 175.)  He recommended physical therapy.  (Tr. 176.)  On January 31, 2018, the plaintiff saw Dr. Saleh again.  (Tr. 178.)  Dr. Saleh noted there were no changes from the plaintiff's previous visit and recommended that he continue physical therapy.  (Tr. 178–80.)

## LEGAL STANDARD

A district court reviewing a final decision of the Commissioner must determine "whether the correct legal standards were applied and whether substantial evidence supports the decision." *Butts v. Barnhart*, 388 F.3d 377, 384 (2d Cir. 2004), *as amended on reh'g in part*, 416 F.3d 101 (2d Cir. 2005).  To be conclusive, the Commissioner's findings of fact must be supported by substantial evidence, or "more than a mere scintilla" and "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).  Furthermore, the Court must defer to the Commissioner's findings of fact when they are supported by substantial evidence but will refrain from deference where "an error of law has been made that might have affected the disposition of the case."  *Pollard v. Halter*, 377 F.3d 183, 189 (2d Cir. 2004) (internal citations omitted).  Consequently, "[e]ven if the Commissioner's decision is supported by substantial evidence, legal error alone can be enough to overturn the ALJ's decision."  *Ellington v. Astrue*, 641 F. Supp. 2d 322, 328 (S.D.N.Y. 2009) (citing *Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987)).

**DISCUSSION**

The plaintiff argues remand is warranted because the ALJ did not fully develop the record, "issue subpoenas for records and/or testimony" (ECF No. 20 at 2–3), that "there were obvious gaps" that the "ALJ failed to fill before making her decision" (ECF No. 14 at 8), and that "the administrative record does not include a single treatment record" from Dr. Zimilevich, even though he "mostly receiv[ed] treatment from [her]." (*Id.*) This argument is easily refuted.

The ALJ has an affirmative duty to help the plaintiff "develop [his] complete medical history" given the non-adversarial nature of a benefits proceeding. 20 C.F.R. § 404.1512(b); *see Sims v. Apfel*, 530 U.S. 103, 110–11 (2000). To that end, the ALJ must make "every reasonable effort" to assist the plaintiff in obtaining medical evidence from their medical sources. 20 C.F.R. § 404.1512(b)(1). "Every reasonable effort" requires making an initial request for evidence from the plaintiff's medical source, and, if no response, making one follow-up request with the source within 10 to 20 calendar days. 20 C.F.R. § 404.1512(b)(1)(i); *see Perez v. Chater*, 77 F.3d 41, 47 (2d Cir. 1997).[4]

On March 8, 2018, the ALJ sent medical questionnaires to Drs. Zimilevich, Klug, Saleh, and Jayasundera, (Tr. 245–72, 277–82), and requested medical records from Coney Island Hospital. (Tr. 273–76.) Dr. Klug and Coney Island Hospital had no relevant records. (Tr. 181, 183). Dr. Saleh sent records reflecting two appointments in November 2017 and January 2018, respectively. Dr. Zimilevich and Dr. Jayasundera did not respond. The ALJ sent follow-up

---

[4] The ALJ's duty is heightened in some circumstances—for example, if the plaintiff is *pro se* or suffers from cognitive impairments. *See Devora v. Barnhart*, 205 F. Supp. 2d 164, 172 (S.D.N.Y. 2002) ("When the claimant appears *pro se*, as was the case here, the ALJ has a heightened duty to develop the administrative record prior to making a determination."); *Corporan v. Comm'r of Soc. Sec.*, No. 12-CV-6704, 2015 WL 321832, at *2 (S.D.N.Y. Jan. 23, 2015) ("The law in this circuit and elsewhere points to the commonsense conclusion that, where a claimant is both unrepresented by counsel and obviously handicapped by a mental impairment, an ALJ bears a doubly heighted duty to develop the record."). No such exception applies here.

letters to both physicians on March 22, 2018.  (Tr. 241–44.)  Again, neither responded.
Although she already satisfied 20 C.F.R. § 404.1520(b)(1)(i), the ALJ continued in her efforts.

On March 8, 2018, when the ALJ sent the initial record requests, she asked the plaintiff
to submit a report on his functional limitations and work history.  (Tr. 198–217.)  He did not
respond, so the ALJ sent a follow-up request on March 23, 2018.  (Tr. 195.)  She also reminded
the plaintiff and his counsel that he had to submit evidence to substantiate his claims.  On May 3,
2018, the ALJ informed the plaintiff and his counsel "of [the] requirement to submit all evidence
. . . that relates to whether [the plaintiff] is disabled . . . and instructed him to contact [the
agency] or his representative if he needed help obtaining evidence."  (ECF No. 19-1 at 3.)  The
ALJ sent letters to the same effect on December 14, 2018 and May 13, 2019.

The plaintiff's counsel sent requests to Drs. Zimilevich, Shapsis, Lyden, New York
Presbyterian, and Behavior Medical Research; counsel represented to the ALJ that "[s]hould a
reply be provided to us before or after the general deadline, our office will submit it to the
[agency] as expeditiously as possible."  (Tr. 166.)  Counsel also sent a letter on October 1, 2019
saying that "there may be additional providers that the claimant has treated with."  (Tr. 167.)
However, at no point did the plaintiff identify other doctors, and it does not appear from the
record that he or his counsel made any efforts to find additional relevant records.

The ALJ made two requests to the plaintiff for additional information.  He did not
respond for eight months; when he finally did, he submitted only a short report to the effect that
Dr. Zimilevich treated him in 2013 and prescribed over-the-counter Advil for pain.  (Tr. 165.)
Even the plaintiff's counsel could not get the plaintiff to respond.  (Tr. 167.) ("Our office
inquired about any additional doctors, and no information was provided . . . by [the plaintiff].")

After the hearing, the ALJ granted the plaintiff a three-week extension to secure and submit additional evidence from Dr. Zimilevich.  (Tr. 15, 45.)  The plaintiff did not do so. Although he now faults the ALJ because she did not issue subpoenas, neither the plaintiff nor his lawyer took the ALJ up on her suggestion—which she made several times—that the plaintiff could "ask the ALJ to issue a subpoena that requires a person to submit documents or testify at your client's hearing."  (Tr. 84.)  The Appeals Council also gave granted the plaintiff an extension of time to supplement the record; he did not do so.  (Tr. 7.)

The ALJ's duty to develop the record is "affirmative"—but it is not "limitless."  *Kennedy v. Comm'r of Soc. Sec.*, No. 17-cv-908, 2019 WL 988889, at *2 (W.D.N.Y. Mar. 1, 2019); *Yarger v. Comm'r of Soc. Sec.*, No. 1:18-CV-00489, 2019 WL 1873165 at *3 (W.D.N.Y. Apr. 26, 2019); *Miraglia v. Comm'r of Soc. Sec.*, No. 20-CV-1964, 2022 WL 1556409, at *2 (E.D.N.Y. May 17, 2022) ("This obligation [to develop the record] is not absolute.").  The plaintiff's argument that "there is no evidence that the ALJ made any effort to obtain Dr. Zimilevich's records" (ECF No. 14 at 9), is refuted by the record, which details multiple efforts "to procure reports and records from [the plaintiff's] past medical providers . . . ."  *D'Aquino v. Comm'r of Soc. Sec.*, No. 20-CV-3947, 2022 WL 10568161, at *3 (E.D.N.Y. Oct. 18, 2022). The ALJ cannot be faulted because the providers did not respond.  *Coyle v. Apfel*, 66 F. Supp. 2d 368, 374 (N.D.N.Y. 1999) ("It would be unjust to penalize the defendant for [the treating physician's] apparent continuous refusal to comply with defendant's requests for medical information concerning plaintiff's condition.").  Nor can the "[p]laintiff [] simply identify arguable gaps in the administrative record and claim that such gaps are a *per se* basis for remand," particularly "where (as here) [the plaintiff], through counsel, requested and received additional time to obtain the evidence in question and then failed to produce it without asking for

more time or for issuance of a subpoena." *Myers ex rel. C.N. v. Astrue*, 993 F. Supp. 2d 156, 163 (N.D.N.Y. 2012)

While the ALJ has the inherent authority to issue subpoenas, she is also permitted to rely on the plaintiff and his counsel to obtain additional medical records. *See id.*; *Rivera v. Commissioner of Social Sec.*, 728 F.Supp.2d 297, 330 (S.D.N.Y.2010) ("Courts do not necessarily require ALJs to develop the record by obtaining additional evidence themselves, but often permit them to seek it through the claimant or his counsel. . . . Accordingly, the ALJ's request that plaintiff's attorney obtain the recent treatment records from Lincoln Hospital fulfilled his obligations with regard to developing the record.") (citations omitted); *Pagan v. Astrue*, No. 11–CV–825, 2012 WL 2206886, at *8 (N.D.N.Y. June 14, 2012) (holding that the ALJ satisfied duty to develop record by granting counsel additional time to obtain evidence and providing opportunity to request a further extension).  In short, the ALJ fulfilled her duty in this case, repeatedly urging the plaintiff and counsel to provide additional records, efforts that she continued even when the plaintiff did not respond.  *Vay v. Comm'r of Soc. Sec.*, 382 F. Supp. 3d 267, 273 (W.D.N.Y. 2018).

Under these circumstances, remand is not warranted.

**CONCLUSION**

For these reasons, the plaintiff's motion for judgment on the pleadings is denied and the Commissioner's cross-motion is granted.

The Clerk of Court is directed to mark the motion at ECF No. 14 as "denied" and the motion at ECF No. 19 as "granted," and enter judgment for the Commissioner.

**SO ORDERED.**

s/Ann M. Donnelly

ANN M. DONNELLY
United States District Judge

Dated: Brooklyn, New York
September 25, 2023